**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| SMS PROMOTIONS, LLC | : | CASE NO. 15-20901 (AMN) |
| | : | |
| DEBTOR. | : | |

**OBJECTION TO MOTION FOR ORDER COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. § 365(d)(2)**

SMS Promotions, LLC (the "Debtor" or "SMS"), as debtor and debtor-in-possession, hereby objects to the Motion for Order Compelling Assumption or Rejection of Executory Contract Pursuant to 11 U.S.C. § 365(d)(2) (Doc. No. 30) (the "Motion"), filed by creditor Ryan Martin ("Martin"). In support thereof, the Debtor states upon information and belief as follows:

1. On May 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition (the 'Petition") for relief under Chapter 11 of the Bankruptcy Code.

2. SMS Promotions LLC ("SMS") is an active Nevada-domiciled limited liability company organized in 2012. Curtis J. Jackson III ("Mr. Jackson") is the managing member of SMS and is the individual who has capitalized SMS during its early years of operations. All management decisions are made by Mr. Jackson, an internationally acclaimed rap artist known as "Fifty Cent" and resident of Farmington, Connecticut. Mr. Jackson boxed competitively as a young man and has a long history of involvement in the boxing profession. SMS has previously promoted boxing events in Nevada, New York, Florida, Texas, and Connecticut.

3. SMS currently has 8 boxers under contract, including Martin. Other boxers who have signed with SMS during the last three years include former featherweight champion Yurikis Gamboa, World Light Middleweight contender James Kirkland, Luis Olivares, and Donte

1

Strayhorn. SMS also provides its boxers with a state-of-the-art boxing gym and training facilities.

4. As a result of liquidity concerns and the need to restructure (or reject) certain contracts, SMS filed the Petition. SMS intends to move forward quickly with a plan and with its review of various critical contracts. In addition, SMS may seek court approval to assign certain contracts to other promoters. SMS intends to continue moving forward with its promotion activities and hopes to file its plan of reorganization within a reasonable time.

5. SMS entered into a certain Promotional Rights Agreement with Martin, dated September 13, 2013 (the "Agreement"). Pursuant to the Agreement, SMS was to facilitate seven fights in the first year of the contract and four fights in the second year. Martin fought in eight bouts in the first year in which the Agreement was in effect and six in the second year. Thus, SMS has not breached the Agreement, and in fact, provided more fights that Martin was entitled under the terms of the Agreement. Martin has had more fights during the term of the Agreement than a typical fighter of his age.

6. Of the fourteen fights that Martin had during his relationship with SMS, some were promoted solely by SMS or co-promoted by SMS. Other fights were promoted by other promoters because the fight was on their "card." This is typical in the boxing industry as there are many promoters and only a limited amount of televised dates for fights. Even where a fight was not on SMS's "card," SMS would arrange these fights on behalf of Martin by having its "matchmaker" make arrangements with other promoters.[1] Moreover, as is typical with young boxers like Martin, SMS had to pay for Martin to fight in matches. Thus, a young fighter, like Martin, requires a significant investment by a promotion company such as SMS.

---

[1] On some occasions Martin's manager would arrange a fight and seek approval from SMS to do so. He was not required to do this under the Agreement or by SMS.

7. SMS has also extensively promoted Martin. At least two of Martin's fights promoted or co-promoted by SMS were televised on ESPN. Mr. Jackson also featured Martin in one of his music videos. Additionally, the last match in which Martin fought was the undercard to a fight between Canelo Alvarez and James Kirkland, which was a major fight. Although the undercard match was not televised, and SMS had given Martin an opportunity to fight in a televised fight, Martin chose to fight in this undercard because of the notoriety associated with it.

8. As recently as this month, Martin was offered a fight by SMS. However, Martin refused the bout because he is trying to obtain a release from the Agreement.

9. On request from a party to a contract, the court may order that the debtor in possession to determine within a specified period of time whether to assume or reject the contract. 11 U.S.C. § 365(d)(2). "However, the request is rarely granted." A.N. Resnick and H.J. Sommer, Collier on Bankruptcy, ¶ 365.05[2][a] (16th ed.). If the court determines that such relief is justified, the debtor in possession has a reasonable time within which to decide to assume or reject the contract, which is determined under the facts and circumstances of the particular case. Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1982). As under the Bankruptcy Act, the trustee's or debtor in possession's rights are paramount. Id. at 106. In considering a motion to compel assumption or rejection, "the court must take into account the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).

10. SMS should be given a reasonable time to formulate a plan of reorganization, and as part of that plan, assume or reject the Agreement. It is just over four months from the Petition

3

Date, and it is reasonable for SMS to be given time to organize its affairs and make important decisions regarding its contracts with fighters. The nature of the interest at stake here is of great importance to the Debtor and is at the core of its business—i.e., making decision as to which boxers it will promote. It requires significant time and effort in order to assess the value of contracts with individual boxers, which includes making decision as to the future success of a fighter and whether SMS's investment in that fighter is economically prudent.

11.     Moreover, contrary to Martin's assertions in the Motion, SMS has not breached the Agreement as set forth in the facts above. In fact, SMS has arranged more fights than it was required to do under the terms of the Agreement and has promoted Martin by, among other things, including him in a music video. Thus, the balance of the harms favors SMS as Martin will not be damaged by the continued performance of SMS under the Agreement. It is Martin, rather than SMS, who has refused to participate in a future fight offered by SMS.

12.     Martin is protected if the Court denies the Motion. If, thereafter, SMS does not assume or reject the Agreement in a plan of reorganization within a reasonable time or breaches the Agreement, Martin can move again to compel assumption or rejection. In the meantime, SMS will continue to promote Martin and obtain fights under the terms of the Agreement.

13.     Last, compelling assumption or rejection, especially on the abbreviated schedule suggested by Martin would thwart the goal of the Bankruptcy Code to promote a successful reorganization in this case. Theatre Holding Corp., 681 F.2d at 106 ("[U]nless a debtor has the leeway needed to appraise its financial situation and the potential value of its assets in terms of the formulation of a plan, the opportunity given by that Chapter would be frustrated.") (citation and quotation marks omitted). SMS should be given time to assess the value of its assets,

4

including contracts with individual boxers which are not easily valued, and formulate a plan without being forced to make a decision regarding Martin in a short period of time.

WHEREFORE, based upon the foregoing, SMS respectfully requests that the Court deny the Motion and grant such other and further relief as justice requires.

Dated at Bridgeport, Connecticut this 14th day of October, 2015.

By:   */s/James Berman*
James Berman (ct06027)
John L. Cesaroni (ct29309)
**ZEISLER & ZEISLER, P.C.**
10 Middle Street, 15th Floor
Bridgeport, Connecticut  06604
Telephone: (203) 368-4234
Facsimile: (203) 367-9678
jberman@zeislaw.com
**COUNSEL TO THE DEBTOR**

and

NELIGAN FOLEY, LLP

Patrick J. Neligan, Jr.
Texas State Bar No. 14866000
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
(214) 840-5300
Attorneys for the Debtor

## CERTIFICATE OF SERVICE

This is to certify that on October 14, 2015, a true and correct copy of the foregoing Objection was served electronically via this Court's CM/ECF notification system on all parties and/or counsel of record.

        */s/James Berman*
        James Berman (ct06027)
        **ZEISLER & ZEISLER, P.C.**
        10 Middle Street, 15th Floor
        Bridgeport, Connecticut 06604
        Telephone: (203) 368-4234
        Facsimile: (203) 367-9678
        jberman@zeislaw.com
        **COUNSEL TO THE DEBTOR**